# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN ARTHUR, | ) 1:11-cv-0134 AWI- BAM </br> ) </br> ) </br> ) **FINDINGS AND RECOMMENDATIONS** </br> ) **REGARDING PLAINTIFF'S** </br> ) **SOCIAL SECURITY COMPLAINT** </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Stephen Arthur ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for social security disability insurance benefits on August 3, 2008, alleging disability beginning December 2, 2006. AR 74, 128-34. Plaintiff's application was denied initially and on reconsideration. AR 79, 88. Subsequently, Plaintiff requested a hearing

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

before an Administrative Law Judge ("ALJ"). AR 35. ALJ Timothy Snelling held a hearing on October 20, 2009, and issued an order denying benefits on April 10, 2010. AR 23-31. Subsequently, the Appeals Council set aside the ALJ's decision to consider additional evidence. Upon further review, the Appeals Council issued a decision affirming the ALJ's order. AR 1-5. This appeal followed.

**Hearing Testimony**

ALJ Snelling held a hearing in Stockton, California, on October 20, 2009. AR 35. Plaintiff personally appeared and was assisted by attorney Jeffrey Milam. AR 35.

Plaintiff was forty-seven years old at the time of the hearing. AR 43. He is married and lives with his wife, ten-month old son, sixteen-year old daughter, and twenty-year old son. AR 43-44. Plaintiff has his GED, completed some college, and is a retired reserve police officer. AR 44, 45.

Plaintiff testified that the primary reason he was unable to work was due to joint stiffness and osteoarthritis. AR 39-40. According to Plaintiff, he had stiffness in his back, hips, hands, knees, and feet. AR 40-41. When asked about the pain in his feet, Plaintiff testified that he predominantly experiences pain in his toes. AR 40. Plaintiff testified that sitting in a recliner helped to alleviate the pain in his back. AR 52-53.

When asked about his other impairments, Plaintiff stated he also suffers with irritable bowl syndrome ("IBS") for about three weeks of every month. AR 41. According to Plaintiff, he also suffers with depression. Plaintiff was prescribed Lexapro for his depression but stopped taking it because it aggravated his IBS. AR 42. Plaintiff also recently had surgery on his left elbow, which relieved numbness in his hand. AR 42, 53-54.

When asked about his past relevant work, Plaintiff testified he was a former reserve police officer in San Jose, California. AR 45. As an officer, he spent 70% of his time standing while directing traffic, and 20% to 30% of the time sitting while patrolling in his service vehicle. AR 45. On the job, he experienced some swelling in his knees and hands, but at the time he had not been diagnosed with arthritis or IBS. AR 47. When asked about his ability to return to his work as a police officer, Plaintiff stated that he would no longer be able to defend himself as an officer. AR

46. In Plaintiff's opinion, he would not be able to wrestle or chase a suspect and would be more of a hazard to the force than a help. AR 46.

Plaintiff used a cane at the hearing, but testified that it had not been prescribed by a doctor. AR 70. Plaintiff alleged that he could walk a block without a cane. AR 70. He alleged that he could sit for an hour at a time, and stand for 45 minutes at a time if he had something to lean against. AR 71. He testified that he could comfortably lift about 20 pounds, he however had difficulty grabbing objects because of swelling in his hands. AR 55-56, 71. In addition, Plaintiff testified that he has experienced five fainting episodes, which he alleged was the result of pain. AR 58-61.

With respect to daily activities, Plaintiff indicated that he did not have problems dressing or bathing, other than putting on his shoes. AR 58. Plaintiff testified that he microwaved food, made toast, and was able to vacuum, but was unable to care for his youngest son on his own. AR 56.

Plaintiff's wife, Candice Arthur, also testified at the hearing. AR 65-66. Mrs. Aruthur testified that Plaintiff played with their infant son for short periods of time. AR 66-67. When asked about Plaintiff's depression, Mrs. Arthur testified that Plaintiff's depression had worsened after he stopped taking the antidepressant Lexapro. AR 68-69. According to her testimony, she encouraged Plaintiff to seek counseling. AR 68. She stated it was not until prior to the hearing that Plaintiff took the steps to schedule an appointment with a counselor. AR 69. Plaintiff's first planned appointment was scheduled for Friday after the hearing. AR 68.

**Medical Record**

The entire medical record was reviewed by the Court. AR 121-439. The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 23-31.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 2, 2006. AR 23. Further, the ALJ identified small internal hemorrhoids; multiple non-bleeding ulcers in the duodenal bulb, hiatal hernia, partial lumabrization of S1, degenerative disc

disease changes at L5-S1, moderate facet joint arthritic changes at L5-S1, disc dessication changes at L1-2, mild compression of the left ulnar nerve at the elbow, very mild bilateral carpal tunnel syndrome, gastroesophageal reflux disease, and minimal osteoarthritis of the right wrist, right hand, and bilateral hips as severe impairments. AR 25. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 26.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to complete the full range of light work. AR 28.

Next, the ALJ determined that Plaintiff was unable to perform his past relevant work as a police officer. Nevertheless, considering Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred in: (1) evaluating his credibility; (2) improperly discounting the lay witness statements by his wife and the agency field office representative; and (3) improperly relying on the Medical-Vocational Guidelines rather than obtaining vocational expert testimony.

## DISCUSSION

**A.  Credibility**

The nexus of Plaintiff's complaint surrounds's the ALJ's credibility assessment. According to Plaintiff, the ALJ found Plaintiff suffered from a host of impairments, but improperly rejected his testimony about the limitations caused by these impairments. (Doc. 15 at 7). Defendant responds that the ALJ's credibility finding is supported by substantial evidence. (Doc. 19 at 6).

An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

The ALJ made an adverse credibility finding because: (1) Plaintiff failed to follow his prescribed treatment plan; (2) Plaintiff was prescribed only conservative medical treatment; (3) Plaintiff's condition was controlled by medications; (4) Plaintiff's activities of daily living were inconsistent with his alleged degree of impairments; and (5) the objective medical evidence did not support Plaintiff's subjective statements  AR 28.

5

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638.

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ identified several of Plaintiff's impairments as severe impairments. AR 25. He further found that:

> After careful consideration of the evidence, I find that the claimant's medically-determinable impairments can reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 27.

This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

Second, "in order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision.*" Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Specifically, here ALJ Snelling made the following findings:

> The claimant alleged that he had stiffness in his back, hands (right more than left), toes, knees, and hips which inhibited his ability to move about. He alleged symptoms of irritable bowl syndrome affecting him three weeks out of a month. He also alleged depression and fatigue.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> First, the objective evidence is consistent with the residual functional capacity and inconsistent with the claimant's allegations that he was unable to perform any work activity. In terms of the claimant's alleged back pain, a magnetic resonance imaging scan of the lumbar spine in June 2007 showed some degenerative disc disease changes at the L5-S1 and L4-5 levels, and some disc dessication changes at the L1-2 level, but there was no significant spinal canal stenosis present. In terms of claimant's alleged hand and arm numbness, an EMG and nerve conduction velocity study on both upper extremities in June 2008 showed mild compression of the left ulnar nerve at the elbow but no evidence of ulnar nerve involvement at the wrist. It also showed very mild bilateral carpal tunnel syndrome but no evidence of acute axon damage or any other peripheral entrapment neuropathy.
>
> The claimant's overall treatment history is also inconsistent with his allegations and further supports the residual functional capacity given above. The claimant consulted an orthopedic surgeon in August 2008 who determined that the claimant had left elbow cubital tunnel syndrom and mild bilateral carpal tunnel syndrome. The doctor discussed outpatient surgery with the claimant but noted that the claimant would "decide if his symptoms are bad enough and wants to proceed." Thus, the doctor indicated that the procedure was an elective operation, suggesting that the necessity of the surgery was not dictated by the objective findings. In any event, the claimant chose not to undergo a left ulnar nerve transposition on September 29, 2008. Notes from a post operative telephone assessment on October 21, 2008 indicate that the claimant's pain level on a scale of 0 to 10 was only "a little bit." And at the hearing, the claimant stated that his hands were no longer numb. The record also contains evidence that the claimant was prescribed nine sessions of physical therapy to treat his neck and back pain but never started treatment despite the physical therapist's

> attempt to contact him.  If the claimant's impairments were as severe as he alleged, one might expect that the claimant would seek and follow through with treatment.
>
> In addition, a number of the claimant's conditions were controlled with the use of medication or did not require the use of medication.  For example, treatment notes from August 2007 state that the claimant's irritable bowel syndrom had been 'stable and non progressive," and response to treatment was "good with much improvement."  Further, the claimant was prescribed medication for his mental impairment by his primary care physician.  However, the claimant testified that he was not currently on any medication and had not been using any for the past month.  Although he stated that his doctor had recommended he see a mental health professional, the claimant had not yet done so.  Although the possible lack of access to care is not a factor to be used against the claimant, it at least tends to indicate that his symptoms were not as severe as he alleged.  In sum, his treatment history is inconsistent with an alleged inability to perform all work activity.
>
> Finally, the claimant's reported daily activities are inconsistent with his alleged degree of impairments.  As noted, the claimant stated, and his wife confirmed, that he was able to care for his personal care needs and those of his daughter, granddaughter, and dog.  He also engaged in hobbies such as reading, watching television, and knitting.  In short, the claimant's activities tend to show that he did have ability to perform basic work functions.  When as here, the claimant was able to spend a substantial part of the day in activities involving the performance of functions readily transferable to competitive work, I am entitled to give less weight to allegations of disabling impairment.

AR 27-28. (Citations omitted).

The ALJ provided a number of clear and convincing reasons that are supported by the record when concluding Plaintiff's subjective symptom testimony was less than credible.

First, the ALJ properly found that Plaintiff failed to pursue treatment with a mental health professional.  AR 28.  20 C.F.R. § 404.1529(c)(3)(v) (ALJ should consider treatment, other than medication, that Plaintiff has received for relief of pain or other symptoms); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ properly discredited Plaintiff's testimony of depression and fatigue because Plaintiff did not seek treatment or evaluation).  Plaintiff testified that he did not pursue mental health treatment because insurance did not cover the treatment.  AR 65.  However, Plaintiff's wife's testimony indicated that Plaintiff did not seek treatment, not because of lack of insurance, but because he did not want to start treatment.  In particular, Plaintiff's wife testified that she "really want[ed] him to see a counselor but he's just recently gone through the . . .steps to get that done" and further testified that "I would have made the appointment for him..." AR 69.  In fact, Plaintiff scheduled his first appointment with a counselor for the Friday after the ALJ's hearing.  AR 68.

8

In addition, the ALJ found that claimant failed to pursue physical therapy treatment for his alleged back and neck pain. AR 28. *See* 20 C.F.R. § 404.1529(c)(3)(v). Specifically, on February 6, 2008, a staff member at the Payne-Murphy Physical Therapy group notified Plaintiff's treating physician, Dr. Schmidt, that Plaintiff failed to attend any of his nine prescribed visits, and that staff at the physical therapy center had tried to contact Plaintiff several times for an initial evaluation and had not been successful in starting physical therapy. AR 307. In a statement submitted to the Appeals Council, Plaintiff asserts that he attended two physical therapy sessions with a different physical therapy group (Golden Bear Physical Therapy) and did not return to physical therapy there because he was in more pain and could not afford the copayments.[2] This however does not alter the fact that Plaintiff still failed to pursue his prescribed treatment plan. Plaintiff instead chose a different course of physical therapy than the one prescribed by Dr. Schmidt. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated").

Second, the ALJ properly found that Plaintiff's symptoms, including his IBS, responded well to conservative treatment. AR 28. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (favorable response to conservative treatment undermined plaintiff's reports regarding the disabling nature of his pain). In June 2007, Dr. Schmidt noted that Plaintiff had abdominal pain, but his diarrhea was "less with meds." AR 282. An August 2007 progress note was contradictory, stating both "patient has not found anything that helps or ameliorates symptoms, but at the same time noting "[r]esponse to treatment is good with much improvement." AR 280-81. Plaintiff's treatment at the time included the antidepressant Imipramine, Voltaren, the heartburn drug Nexium, and the fiber supplement FiberCon. AR 280. Dr. Schmidt recommended that Plaintiff, improve his diet, continue current medications, avoid fatty, fried, creamy, and oily foods, and reduce carbohydrates

---

[2] Defendant argues that the Court should not consider evidence submitted to the Appeals Council. According to Defendant, because the Appeals Council denied review in Plaintiff's case, this Court has no jurisdiction to review the Appeal's Council's denial of review. (Doc. 19 at 6). The Court disagrees. The Ninth Circuit has recently held that "when the Appeals Court considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Thus, the Court will consider Plaintiff's evidence presented to the Appeals Council.

including sugars. AR 285. A January 10, 2008 progress report noted that Plaintiff's symptoms were negative for diarrhea, although he did have heartburn. AR 277. Although Plaintiff's diarrhea subsequently returned, Dr. Schmidt only recommended adjusting Plaintiff's medications. AR 407-09. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (credibility finding supported where allegations of disabling symptoms were inconsistent with the conservative treatment that Plaintiff received). Likewise, as to Plaintiff's carpal tunnel and cubital tunnel syndrome, surgeon Richard Slovek, M.D., did not recommend surgery, but instead stated that Plaintiff should "decide if his symptoms are bad enough and wants to proceed with outpatient surgery." AR 256.

Third, Plaintiff's daily activities during the relevant time period were inconsistent with his allegations of disabling symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (allegation of disability undermined by testimony about daily activities). In his written statement, Plaintiff noted that he recently started taking his youngest daughter and granddaughter to and from school, took care of the pets, helped out with household chores, and checked a box indicating that he had no problem with personal care. AR 162-64. His wife noted that on a typical day, Plaintiff's activities included household chores, watching TV, and "keeping busy with knitting loom projects." AR 176. Plaintiff's wife stated that his stomach felt normal on some days and he made no more than one trip to the bathroom, and even on bad days Plaintiff only required 2-5 trips to the bathroom. AR 176. The ALJ rationally inferred that this evidence was inconsistent with disabling symptoms . (Doc. 15 at 7). *See Burch*, 400 F.3d at 680-61 ("[a]lthough the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch," the ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation).

Fourth, the ALJ noted that there was sparse objective medical evidence to support Plaintiff's claims of disabling pain. An ALJ is entitled to consider whether there is a lack of objective medical evidence to corroborate a claimant's subjective symptoms, so long as it is not the only reason for discounting the claimant's credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Here, the ALJ noted that "there is no opinion or other evidence that the claimant's impairments met or equaled a listing." AR 27. The ALJ further opined:

> The state agency psychiatric consultants determined that the claimant's conditions did not meet and were not equivalent to any condition listed in Appendix 1. The state agency medical consultants provided an opinion in no way consistent with a finding of a listing-level impairment. Nor do I find medical evidence that the claimant's impairment were so profound as to be listing level in severity.

AR 27.

Substantial evidence supports the ALJ's opinion in this regard. For example, an MRI of Plaintiff's spine reflected some degenerative disc disease changes and dessication, moderate facet joint arthritic changes, and partial lumbarization of S1, but no significant spinal canal stenosis present. AR 232-33. An August 28, 2007 musculoskeletal examination demonstrated grossly normal tone and muscle strength, with complaints of tenderness, but full painless range of motion of all major muscle groups and joints. AR 281. The ALJ correctly determined that objective medical tests failed to show significant abnormalities. AR 28.

Given the considerations made by the ALJ, the ALJ properly made "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. Consequently, the adverse credibility determination was proper.

**B.     Lay Witness Testimony**

Next, Plaintiff argues that the ALJ failed to provide specific, germane reasons for rejecting the lay testimony of his wife Candis Arthur, and the statements of an agency field representative. (Doc. 17 at 21).

At the administrative hearing, Plaintiff's wife testified that Plaintiff's knee swelled after one hour of standing or walking. This also caused Plaintiff's knee, back, and hips to ache. When sitting, Plaintiff needed to re-adjust his position frequently. AR 67. He is unable to sit still for a long time without moving his legs or resituating himself. AR 67. He could not bend more than 90 degrees, kneel, squat, or stand up without support. In her third party function report, Mrs. Arthur testified that Plaintiff showers every morning, brushes his teeth, and fixes himself breakfast daily. AR 176. On a good IBS day, Plaintiff makes no more than one urgent trip to the bathroom. On a poor IBS day, Plaintiff needs to make two to five urgent trips to the restroom. AR 176. Plaintiff's regular activities include driving, watching TV and DVD's, watering the lawn, manually turning off the sprinkler

system, doing laundry, loading the dishwasher or doing a small amount of dishes, and working on knitting loom projects. AR 176, 183.

With respect to lay witness testimony ALJ Snelling found:

> I am also obliged to consider corroborative evidence, especially those witness declaration brought forth by the claimant. As such, I have also considered the statements of the claimants wife. This evidence does not alter my opinion. First, the statements of the claimant's wife do not establish that he is disabled. Since she is not medically trained in exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her testimony is questionable. A family member can only report her observations of the claimant and these observation may not be reflective of his maximal capacities. Moreover, by virtue of her relationship to the claimant, this witness cannot be considered a disinterested third party whose testimony would not tend to be colored by affection for him and a natural tendency to agree with the symptoms and limitations he alleges. Most importantly, I cannot give great weight to her testimony because it, like the claimant's is not fully consistent with the medical opinions and other evidence herein. To the extent that the claimant's wife's statements conflict with the decision in this case, I find that they fail to overcome the probative effect of that other evidence. In some cases, her statements actually support the residual functional capacity given above, as they attest to the claimant's range of activities and continued ability to perform basic tasks. As such, I give her statements limited weight.

AR 29.

Most notably, the ALJ discounted Mrs. Arthur's lay witness opinion because it was unsupported by the medical record. AR 29. In order to reject Mrs. Arthur's testimony, the ALJ was required to set forth reasons that were germane to her testimony. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Inconsistency with medical evidence is a germane reason to discount lay witness statements. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."), and is supported by substantial evidence in the record.

In this case, Mrs. Arthur stated that Plaintiff had difficulty concentrating, as well as bending, standing, and walking. AR 181, 184. On the other hand, Dr. Murillo and Dr. Loomis found that Plaintiff's adjustment disorder was non-severe and did not impact Plaintiff's ability to work. AR 319-31, 381. Likewise, Plaintiff's treating physician, Dr. Schmidt, only recommended that Plaintiff avoid heavy exertion, and state agency non-examining physicians Dr. Glaser and Dr. Fast found that Plaintiff could perform work involving light exertion, with limited ability to push/pull in his upper extremities, as well as postural limitations. AR 314-18, 330-31, 381, 386. Further, the ALJ noted

that there was no medical opinion or other evidence that Plaintiff's impairments met or equaled a listing. AR 27.

The ALJ's second reason for questioning Mrs. Arthur's testimony that, as his wife, she was likely motivated to help him—is less compelling. AR 29. Generally speaking, ALJ's are entitled to employ ordinary credibility evaluation techniques in evaluating a witness's testimony. *Smolen*, 80 F.3d at 1284. But, in this circuit, ALJs are not allowed to consider the fact that the witness is the claimant's wife in assessing credibility. *See Regennitter v. Comm'r of Social Sec.*, 166 F.3d 1294, 1298 (9th Cir. 1999); and *Smolen*, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."); *but cf. Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (upholding ALJ's rejection of claimant's former girlfriend's testimony based, in part, on fact she had a close relationship with claimant and was possibly influenced by her desire to help him). Thus, the ALJ erred when he took into account any real or perceived bias stemming from the relationship between wife and husband in analyzing Mrs. Arthur's testimony.

However, in light of the other reasons the ALJ cited for rejecting Mrs. Arthur's testimony, this error was harmless. As another reason for not fully crediting Mrs. Arthur's testimony, the ALJ noted that many of Mrs. Arthur's statements bolster the ALJ's RFC finding. The ALJ concluded that Plaintiff's wife's statements were credible to the extent they were consistent with an RFC for light work. AR 29. Even if this court accepted Plaintiff's wife's statements that Plaintiff is limited in his ability to walk, stand, lift, squat, and kneel, those limitations are not inconsistent with Plaintiff's RFC. The ALJ limited Plaintiff to light work. AR 27. Further, the ALJ permissibly rejected Mrs. Arthur's statements suggesting more severe limitations as unsupported by the medical records, one of the reasons he also relied upon to reject Plaintiff's subjective testimony. Accordingly, there was no error in his rejection of Plaintiff's wife's testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693-694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [his wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Plaintiff also contends that the ALJ rejected without explanation the field office's observations of Plaintiff. (Doc. 15 at 25). The ALJ recognized the field office representative's observation that Plaintiff had difficulty sitting, standing, walking, and using his hands. AR 29. Further, the field representative's observation were fully consistent with the evidence the ALJ used in making his RFC finding. AR 29. The ALJ found the field office representative credible, and discounted his statements only to the extent they were inconsistent with the RFC assessment. AR 29. Because the field office's observations were merely cumulative of the credited evidence and did not conflict with the ALJ's credibility finding, the ALJ was not required to discuss them further. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ need not discuss all evidence but must explain only why "significant," "probative" evidence has been rejected); *Mondragon v. Astrue*, 364 F. App'x 346, 349 (9th Cir. 2010) (ALJ not required to discuss doctors' specific statements "when their substance was adequately represented by the evidence the ALJ did discuss.").

Accordingly, the Court concludes the ALJ did not err when giving the testimony of Mrs. Arthur and testimony "limited weight" because the ALJ provided legally sufficient reasons supported by the record for doing so.

**C.     Application of the Medical-Vocational Guidelines**

Finally, plaintiff contends that the ALJ was required to call a vocational expert instead of relying upon the Medical-Vocational Guidelines (the Grids) to assess the availability of jobs in the national economy that Plaintiff could perform. Plaintiff contends that his need to alternate sitting and standing is a significant non-exertional limitation that precludes application of the grids. The Court rejects Plaintiff's argument because, as discussed above, there is insufficient objective evidence supporting Plaintiff's allegations of non-exertional limitations. The ALJ properly found that Plaintiff's limitations had little or no effect on the occupational base of the full range of light work. AR 30. *See Kerry v. Apfel*, 242 F.3d 382 (9th Cir. 2000) (recognizing that an alleged non-exertional limitation does not automatically preclude application of the GRIDS, and that the ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations). For the reasons identified above, the ALJ's RFC that Plaintiff could perform the full range of light work is supported by substantial evidence.

Accordingly there was no need for a vocational expert. *See Tackett v. Apfel*, 180 F.3d 1094, 1101-04 (9th Cir. 1999) (ALJ may rely upon the Grids where a claimant is capable of performing the full range of jobs in a given exertional category); *see also Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (testimony of a vocational expert is valuable only to the extent that it is supported by medical evidence).

### **RECOMMENDATION**

Based on the foregoing, the ALJ's decision is supported by substantial evidence and is free of legal error.  It is recommended that judgment be entered against Plaintiff, Stephen Arthur, and in favor of Defendant Commissioner of Social Security.

These findings and recommendations will be submitted to the district judge pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   September 13, 2012               /s/ **Barbara A. McAuliffe**
                                            UNITED STATES MAGISTRATE JUDGE